IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DARLA HOWARD,                          §
                                       §
            *Plaintiff*,               §              5-16-CV-00962-FB-RBF
                                       §
vs.                                    §
                                       §
EDGEWOOD INDEPENDENT SCHOOL            §
DISTRICT,                              §
                                       §
            *Defendant*.               §

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the Motion for Summary Judgment filed by

Defendant Edgewood Independent School District. Dkt No. 32 All pretrial matters have been

referred to the undersigned for disposition, pursuant to Rules CV-72 and 1 to Appendix C of the

Local Rules for the United States District Court for the Western District of Texas. Dkt. No. 26.

The Court has federal question jurisdiction; at issue are claims under the Equal Pay Act, 29

U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et*

*seq. See* 28 U.S.C. § 1331. Authority to enter this recommendation stems from 28 U.S.C.

§ 636(b)(1)(B).

For the reasons discussed below, Edgewood's Motion for Summary Judgment, Dkt. No.

32, should be **GRANTED**. In making this recommendation, the Court has considered

Edgewood's Motion, Dkt. No. 32, Plaintiff Darla Howard's Amended Response, Dkt. No. 42,

Edgewood's Reply, Dkt. No. 44, the case file, and the relevant law.

## I.    Factual and Procedural Background

Howard, a former Edgewood teacher, sues Edgewood for discrimination and retaliation. Edgewood first hired Howard as a "classroom teacher," on a 10-month probationary basis, for the 2012-13 school year. Ex. A-1 Mot.;[1] *see also* Exs. A & B to 1st Am. Resp. Although Howard was allegedly informed upon hire that she would teach social studies, as well as coach, Howard Decl. ¶ 2 (Ex. A to 1st Am. Resp.), the undisputed summary judgment evidence reflects that Howard served during her tenure with Edgewood as a "Physical Education and Health teacher" and head coach for the girl's track and co-ed cross-country teams at the John F. Kennedy High School. Compl. ¶ 10[2]; Exs. A-2 & A-3 to Mot. at 2; Howard Decl. ¶ 3; Ex. U to 1st Am. Resp. Howard also served as an assistant coach for the girl's junior varsity volleyball team for the 2012-13 school year. *See* Ex. A-2 to Mot. Howard received a $3,500 stipend for her role during the 2012-13 school year as a head cross-country coach and another $6,500 for serving as a head girls' track coach. Ex. A-2 to Mot.

Edgewood renewed Howard's contract for the 2013-14 school year, Compl. ¶ 10, and she resumed her roles coaching girls track and cross country, receiving the same amount in stipends, Ex. A-3 to Mot. In addition to her coaching duties and role as a health and physical education

---

[1] Exhibits A-1 to A-17 to Edgewood's Motion are authenticated by the affidavit of Travis McKelvain. *See* McKelvain Aff. ¶ 4.

[2] Edgewood does not appear to dispute several basic allegations from Howard's Complaint. Indeed, Edgewood cites several such alleged facts in its motion. *See* Mot. ¶ 4. Accordingly, the undersigned will consider, as undisputed facts of record, Howard's allegations that she was a "Physical Education and Health teacher and coach" for Edgewood. *See McCreary v. Richardson*, 738 F.3d 651, 659 n. 5 (5th Cir. 2013) ("This circuit has long noted that factual statements in the pleadings constitute binding judicial admissions . . . or at the very least adverse evidentiary admissions") (citations omitted); *see also Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987); *Olmedo v. Kiewit Texas Const. L.P.*, No. CIV.A. L-08-61, 2009 WL 3151311, at *2 (S.D. Tex. Sept. 28, 2009.

teacher, Howard began teaching two special elective courses at the start of the 2014 Spring semester. Howard Decl. ¶ 3.

Over the course of the 2013-14 academic year, members of Edgewood's executive team began meeting to discuss a course plan for the following school year in light of new graduation requirements set forth in House Bill 5. *See* Miller-Baker Dep. 16:22-22:10 (Ex. B-3 to Mot.); Mrozenski-Nieto Dep. 20:11-21:7; 22:5-23:5; 26:14-27:5 (Ex. C to 1st Am. Resp.) Although the State of Texas had eliminated health as a graduation requirement before the enactment of House Bill 5, Edgewood had continued to offer the course in previous years. *See* Miller-Baker Dep. 21:21-22:3; Mrozenski-Nieto Dep. 23:9-15. With the passage of House Bill 5, however, Edgewood's executive team determined that health should no longer be offered at Edgewood. *See* Miller-Baker Dep. 22:4-10; 27:2-21; 29:17-25 54:24-55:14; Mrozenski-Nieto Dep. 39:5-40:25; Nanez Dep. (Ex. B-2 to Mot.) 25:1-26:21; 28:8-14; 29:10-16. Due to this program change and the high number of physical education teachers employed at the secondary level, a recommendation was made to Edgewood's Board of Trustees that all health and health/physical education staff positions be eliminated. *See* Miller-Baker Dep. 22:11-25:16; 30:5-14; 32:8-33:25; Ex. A-8 to Mot.; Ninez Dep. 20:22-11; Walheim Dep. 17:19-22 (Ex. H to 1st Am. Resp.); Ex. F to 1st Am. Resp.; Ex. D to 1st Am. Resp. at 4. There is differing testimony regarding who exactly was involved with this recommendation and how it was eventually presented to the Board. It appears, however, that by mid to late February 2014, Howard's supervisor, Athletic Director Robert Gomez, knew of an anticipated reduction in force. *See* Gomez Dep. 55:19-56:11 (Ex. E to 1st Am. Resp.); Ex. G to Resp; Miller-Baker Dep. 30:3-10.

Unaware of the anticipated program change, Howard and coworker Jessica Forshee met with Gomez on February 6, 2014, to complain about perceived sex discrimination by Campus

Athletic Coordinator R. Cerda. *See* Howard Decl. ¶¶ 5, 8; Exs. I & J to 1st Am. Resp. According to Howard, "[d]uring and immediately after that meeting, [she] felt a change in Mr. Gomez's attitude toward [her]." Howard Decl. ¶ 5. Specifically, Howard complains that Gomez tried to immediately "pit" the two women against each other by informing Forshee of complaints Howard had previously made about Forshee's work habits. *Id.* On February 11, 2014, Cerda addressed with Howard concerns he had regarding Howard's withdrawal of the girl's track team from a varsity meet, the low numbers of participants on the team as a whole, and the poor daily attendance for practices. Ex. M to 1st Am. Resp. Howard, believing she "was being and would continue to be a target for retaliation," Howard Decl. ¶ 5, filed with the U.S. Equal Employment Opportunity Commission (EEOC) a Charge of discrimination on February 12, 2014, complaining of race and sex discrimination and retaliation. Ex. K to 1st Am. Resp. Cerda's concerns were memorialized in a February 19, 2014 memo. Ex. M to 1st Am. Resp.

On or about February 21, 2014, Forshee left Edgewood. Howard Decl. ¶ 6. Howard was subsequently removed from teaching two special elective courses so that she could cover Forshee's two health classes. *Id.* ¶¶ 6, 9.

On April 7, 2014, Edgewood's Board of Trustees voted to adopt the superintendent's recommendation that all "Secondary Health Teachers" and "Secondary Physical Education/Health Teachers" be released from employment for the 2014-15 academic year due to the House Bill 5 program change. Ex. F to 1st Am. Resp. at 1, 4. Howard, along with nine other Edgewood employees—four males and six females—were included in this reduction in force. *Id.* at 4-5.

On October 22, 2014, Howard amended her previously filed EEOC Charge to complain that Edgewood terminated her from her position as a coach due to race and sex discrimination and retaliation. Ex. A-14 to Mot.

Howard filed the instant action on September 28, 2016. She alleges she received less money in coaching stipends than comparator male coaches. She also complains that male coaches enjoyed better offices, facilities, equipment (*e.g.*, computers, phones, printers), and uniforms, and that male coaches were provided more autonomy than female coaches. *See* Compl. ¶¶ 13-41, 43-44. Howard alleges that she was selected for the reduction in force due to her sex. *Id.* ¶¶ 37-38. Finally, Howard claims that Edgewood committed the following retaliatory acts after she filed her EEOC Charge: (1) formally reprimanding her on February 19, 2014; (2) "significantly increasing" her job responsibilities; and (3) failing to renew her contract for the 2014-15 academic year. *Id.* ¶¶ 32-33, 42. Howard raises claims under both the Equal Pay Act and Title VII.

## II.    Legal Standards

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323.

5

Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. If, however, the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### III. Analysis

*The Equal Pay Act Claim is Barred.* The Equal Pay Act typically provides a two-year limitations period. 29 U.S.C. § 255(a). But if a willful violation is involved the limitations period extends to three years. *Id.*; *see also Hill v. J. C. Penney Co., Inc.*, 688 F.2d 370, 374 (5th Cir. 1982). As discussed next, Howard's Equal Pay Act claim does not satisfy a two-year limitations period; she may therefore only assert an Equal Pay Act claim if she can sufficiently demonstrate willfulness. *See Ikossi-Anastasiou v. Bd. of Supervisors of La. State. Univ.*, 579 F.3d 546, 552 (5th Cir. 2009). This she also fails to do.

"A[n] [Equal Pay Act] cause of action accrues at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Judy Chou Chiung-Yu Wang v. Prudential Ins. Co. of Am.*, 439 Fed. App'x 359, 365 n.3 (5th Cir. 2011) (quotation omitted). Here, the undisputed evidence reflects that Howard filed this action more than two years after she received her last paycheck. *See* Exs. A-13 to Mot. (reflecting that Plaintiff was terminated on June 6, 2014) & A-17 to Mot. (reflecting that Plaintiff's last payday was August 30, 2014). Accordingly, Howard's claim falls outside a two-year limitations period.

*There is no Triable Issue as to Willfulness*. Edgewood disputes that it acted willfully, and it argues there is no genuine fact dispute concerning willfulness. *See* Mot. at 7-8. Howard has the burden to demonstrate willfulness for the three-year limitations period to apply. *See Steele v. Leasing Enters.*, 826 F.3d 237, 248 (5th Cir. 2016). And to survive summary judgment on the issue, Howard must point to a genuine fact dispute concerning whether Edgewood "knew or showed reckless disregard" for the Equal Pay Act's mandate of equal pay for equal work at the time Edgewood allegedly violated the mandate. *See Ikossi-Anastasiou*, 579 F.3d at 552, 553 & n.24.

All that Howard has invoked on willfulness regards her alleged receipt of smaller stipends than those received by male coaches, Ex. BB to 1st Am. Resp., and her complaints about "sex discrimination on [] campus," *see* Ex. A to 1st Am. Resp., that presumably included complaints of sex-based pay disparities, *see* 1st Am. Resp. at 20-23. But without more, the facts that Howard "was paid less than many of her male colleagues and that [Edgewood] knew she was dissatisfied with this difference are not enough to raise a fact question as to whether [Edgewood] knew or recklessly disregarded that its pay scale was prohibited by the [Equal Pay

Act].” *Ikossi-Anastasiou*, 579 F.3d at 553. “[Howard] has not provided evidence that [Edgewood] actually knew that the pay structure violated the [Equal Pay Act], or that [Edgewood] ignored or failed to investigate [Howard's] complaints.” *Id*. Accordingly, Howard's allegations of willfulness cannot survive summary judgment. *See id.*; *see also Zannikos v. Oil Inspections (U.S.A.) Inc.*, No. CV 12-2508, 2014 WL 12771511, at *12 (S.D. Tex. Jan. 30, 2014) (“While willfulness is typically a question of fact for the jury, where the plaintiff introduces no evidence sufficient to support a finding of willfulness, summary judgment in favor of the defendant is appropriate.”).

Howard alternatively and unconvincingly argues that “should the Court rule that [she] bear[s] the burden of showing willfulness, [she] pray[s] that the court defer and allow time for [her] to seek by declaration and motion to compel evidence that no investigation was undertaken.” 1st Am. Resp. at 22. According to Howard, “[t]he undisputed evidence shows a complaint was made,” and because she sought through discovery “all complaints and investigations and [has] not received any,” it is appropriate to conclude that “Defendant must have failed to investigate or ignored plaintiff's complaints.” *Id.* Thus, Howard continues, “[a]t the very least, there exist[s] a genuine issue of material fact.” *Id.* This argument is too strained.

To reflect a triable question on whether no investigation at all was ever conducted, Howard needs some evidence—any evidence—reflecting a genuine dispute on the issue. *See Ikossi-Anastasiou*, 579 F.3d at 553 (noting no evidence of a failure to investigate). She points to no statement, document, or any other indication in the record to show that no investigation was conducted; she instead relies *only* on the fact that she has not seen positive evidence confirming an investigation was conducted. But the mere absence of documentary evidence in the record confirming an investigation into Howard's complaint is not enough to satisfy her burden in these

circumstances. *Id.*[3] It is not overly burdensome to expect Howard to come forth with evidence—in some form or other—if she is to show a triable issue here. *See Vasquez v. El Paso Cty. Cmty. Coll. Dist.*, 177 F. App'x 422, 424 (5th Cir. 2006) ("If the moving party meets its burden in showing an absence of genuine issue of material fact, then the nonmoving party must 'designate specific facts showing that there is a genuine issue for trial.'") (quoting *Liquid Air Corp.*, 37 F.3d at 1075.

Howard's request for the Court to defer ruling on Edgewood's motion to permit her additional time for further discovery on willfulness is similarly unfounded. This case has been on file for over two years, and the discovery deadline expired over a month and a half before Howard filed her response requesting this relief. Although Howard asserts that she requested, but did not obtain, documentation of investigations of complaints filed by her and other similarly situated individuals, she failed to timely move to compel production of the requested information. Moreover, she points to no evidence in the summary judgment record indicating that her attorney attempted to depose Edgewood employees on the investigation issue. Accordingly, Howard has not established that she "diligently pursue[d] [the] relevant discovery" such that a Rule 56 continuance would be appropriate. *See Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992) (explaining that Rule 56(f), which is now Rule

---

[3] *See also, e.g.*, *Matsushita Elec.*, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [instead,] the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.") (citations omitted and emphasis in original); *Ikossi-Anastasiou*, 579 F.3d at 553 (noting, it is "not enough to raise a fact question as to whether [Defendant] knew or recklessly disregarded that its pay scale was prohibited by the FLSA.. . . [where] [Plaintiff] has not provided evidence that [Defendant] actually knew that the pay structure violated the FLSA, or that [it] ignored *or failed to investigate* [Plaintiff's] complaints") (emphasis added).

56(d), requires that "the non-movant must diligently pursue relevant discovery—the trial court need not aid non-movants who have occasioned their own predicament").

Because Howard filed suit after the two-year statute of limitations expired and has failed to introduce any evidence suggesting a genuine dispute concerning a willful violation, summary judgment for Edgewood on this claim should be granted. Accordingly, the undersigned need not address Edgewood's other argument in favor of summary judgment on Howard's Equal Pay Act claim.

*The Title VII Claims.* Howard asserts claims of unlawful sex discrimination and retaliation under Title VII. Because the summary judgment record contains no direct evidence of sex discrimination or retaliation, the *McDonnell Douglas* burden-shifting framework applies. *See Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (applying *McDonnell Douglas* framework to sex-discrimination claims); *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (applying framework to claims of Title VII retaliation). Under this framework, the initial burden of establishing a prima facie case of discrimination or retaliation rests with the plaintiff. *Nasti*, 492 F.3d at 593; *McCoy*, 492 F.3d at 556-57. Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to show a legitimate, non-discriminatory or non-retaliatory reason for its actions. *Nasti*, 492 F.3d at 593; *McCoy*, 492 F.3d at 557. At this stage, "[t]he employer's burden is only one of production, not persuasion, and involves no credibility assessment." *McCoy*, 492 F.3d at 557; *see also Nasti*, 492 F.3d at 593. If the employer offers such a reason, the burden then shifts back to the plaintiff to show the justification is merely pretext for discrimination or retaliation. *Nasti*, 492 F.3d at 593; *McCoy*, 492 F.3d at 557.

A.     Title VII: Sex Discrimination. A prima facie case of sex discrimination under Title VII involves here a showing by Howard that: (1) she is a member of a protected class; (2) she was qualified for the position that she held; (3) she suffered an adverse employment action; (4) and others similarly situated but outside the protected class were treated more favorably. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). When the adverse employment action is termination resulting from a reduction in force, a plaintiff's prima facie cases involves showing that: "(1) [s]he is a member of a protected group; (2) [s]he was adversely affected by the employer's decision; (3) [s]he was qualified to assume another position at the time of discharge; and (4) there is sufficient evidence, either circumstantial or direct, from which a fact finder may reasonably conclude that the employer intended to discriminate in reaching the adverse employment action such as evidence that others who were not members of the protected class remained in similar positions." *Ortiz v. Shaw Group, Inc.*, 250 Fed. App'x 603, 606 (5th Cir. 2007); *see also Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 252 (5th Cir. 1996); *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996); *Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83-84 (5th Cir. 1995).

1.     Adverse employment action. An adverse employment action for purposes of a discrimination claim consists of "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004). Accordingly, Howard's various allegations of unequal working conditions and treatment do not rise to the level of adverse employment actions for purposes of her discrimination claim. Falling short, for example, are her complaints that male coaches enjoyed better offices, facilities, equipment, and uniforms than female counterparts. *See* Compl. ¶¶ 16-30.

Howard's complaints that male coaches were provided more autonomy in running and organizing their respective teams, *see id.*, are similarly insufficient.

Nor can Howard base her discrimination claim on allegations, raised for the first time in her response, that the relevant adverse employment action was the failure to transfer her into either of two available positions for which she applied. Any such claim, even if it had been raised in her Complaint, would be unexhausted and subject to dismissal.[4] In her EEOC Charge, Howard asserts that she suffered discrimination and was terminated. *See* Ex. K to 1st Am. Resp. & Ex. A-14 to Mot. She does not allege in the Charge that Edgewood failed to transfer or hire her to other positions for which she was qualified. It is too late to raise such a claim now. *See, e.g.*, *Chester v. Am. Tel. & Tel. Co.*, 907 F. Supp. 982, 987 (N.D. Tex. 1994), *aff'd*, 68 F.3d 470 (5th Cir. 1995) (holding that a failure to transfer or hire claim is beyond the scope of an EEOC charge that alleges only a discriminatory discharge).[5]

Howard's Complaint also does not allege that Edgewood discriminated against her by failing to transfer her. This provides a second basis to decline relief on any such newly raised claim. *See Cutrera v. Bd. of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005) (noting that claim not raised in the complaint cannot properly be raised in summary judgment response); *see also Green v. SHA, L.L.C.*, No. 5:09-CV-202-C, 2011 WL 13228989, at *5 (N.D. Tex. Jan. 14, 2011) (same). Howard, however, can rely on these allegations in aid of her prima facie case of

---

[4] *See* Repl. at 9. Contrary to Edgewood's contention, failure to exhaust is not a jurisdictional defect in the Fifth Circuit. *See Davis v. Fort Bend County*, 893 F.3d 300, 303-05 (5th Cir. 2018).

[5] *See also West v. Matsushita Elec. Corp. of Am.*, No. CIV A 398CV0631H, 1999 WL 405236, at *2 (N.D. Tex. Jun. 17, 1999) (finding plaintiff's discriminatory transfer claim beyond the scope of the EEOC claim where plaintiff only alleged in his charge that he was "being separated from the company," and rejecting plaintiff's argument that "[t]he reality of a reduction-in-force case necessarily involves both aspects, and it would be artificial, in such a case, as distinguished from a discharge for cause case, to treat the position's evaporation separate from the failure to move the . . . worker into an available position").

discrimination in the reduction-in-force context, where termination absent any transfer to an available position can under certain circumstances serve as a basis to infer discrimination. But for the reasons discussed below, doing so here is unavailing.

2. <u>Intentional discrimination</u>. It is undisputed that Howard is a member of a protected class (female) and was adversely affected by her termination. Edgewood argues she cannot meet either the third or fourth elements of her prima facie case. Howard appears to have satisfied the third element; she has produced evidence pointing to a genuine issue of material fact as to whether she was qualified and applied for other positions within the district. *See* Exs. A ¶ 6 & Q to 1st Am. Resp. Howard's claim, however, falters on the fourth element, which requires for present purposes that there be a genuine fact issue for the jury on intentional discrimination. Howard alleges that circumstantial evidence suggests Edgewood intended to discriminate against her based on her sex when it selected her for inclusion in the reduction-in-force. In making these allegations, Howard fails to point to any genuine issue of material fact.

Howard argues unsuccessfully, first, that because she was teaching two special elective courses she was "not exactly" a health teacher, and therefore did not meet the reduction-in-force criteria until Gomez reassigned her to cover Forshee's two health classes on or about February 21, 2014. Because Gomez allegedly knew of the reduction-in-force criteria by this date, Howard argues that this reassignment reflects discriminatory (or retaliatory) animus. *See* 1st Am. Resp. at 6-8. But Howard's own pleadings and evidence indicate that she in fact met Edgewood's reduction-in-force criteria. This blunts any supposed inference of discrimination attributable to Howard's inclusion in the reduction-in-force

According to Howard's summary judgment evidence, all Health and Health/PE (Physical Education) teachers were eliminated as part of the reduction in force. *See* Walheim Dep. 17:19-

22 (Ex. H to Resp). Although Howard now attempts to argue she did not fit this criterion because she was "not exactly" a health teacher, she specifically identifies herself as a "Physical Education and Health teacher" in her Complaint, as well as in the evidence she submits. *See* Compl. ¶ 10 ("[T]he District employed Ms. Howard as a Physical Education and Health teacher and coach."); Ex. U to 1st Am. Resp. ("I was hired to teach both PE and Health."). Further, Howard was apparently identified by Edgewood as a health teacher several weeks *before* Gomez reassigned her to cover Forshee's two health classes, and before Gomez allegedly knew of the reduction-in-force criteria. *Compare* Ex. L to 1st Am. Resp. (identifying Howard as a health teacher on January 23, 2014) *with* 1st Am. Resp. at 3 (citing Exs. G and H to 1st Am. Resp.) (stating that by mid-February 2014, Gomez likely knew of the employment areas affected by the proposed reduction-in-force). Finally, by Howard's own admission, several other Edgewood employees who were "not exactly" health teachers were also selected for termination by way of the reduction in force, including a male. *See* 1st Am. Resp. at 7 (explaining that Manual Torres and Wanda Johnston, two individuals who were identified for termination resulting from the reduction-in-force, were "C&T Health Science teachers, not exactly Health teachers").

Second, Howard argues that because she was replaced by a male coach, David Castillo, there is sufficient evidence of intentional discrimination. *Id.* at 14. This argument also fails because Howard has failed to sufficiently show that Castillo actually replaced her.

According to Howard, for the school year after Howard's contract non-renewal, Castillo—a "new" employee to the district and campus—coached girls' track and co-ed cross-country as the head varsity coach, just like Howard did before her non-renewal. 1st Am. Resp. at 14 (citing Ex. S). But, as Howard's probationary contract with Edgewood makes clear, Howard was hired as a "classroom teacher," not just as a coach. *See* Ex. B to 1st Am. Resp. Thus, it

14

appears that Howard's coaching duties were ancillary to her teaching position. Howard has failed to produce any evidence suggesting Castillo was hired also to assume Howard's duties as a classroom health and physical education teacher, or that he was hired to perform the work of other employees who replaced Howard in that role. "[A] person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties."). *Pilcher v. Cont'l Elecs. Corp.*, 121 F.3d 703 (5th Cir. 1997).[6] Accordingly, Howard's subjective belief that Castillo was her replacement is insufficient with respect to the fourth element of her prima facie case. *See, e.g.*, *Chavarria v. Despachos Del Notre, Inc.*, 390 F. Supp. 2d 591, 599 (S.D. Tex. 2005) ("Plaintiff Gonzalez's subjective belief that Mr. Vallejo was his replacement is not enough to establish the fourth element of his prima facie case. He does not allege any specific facts, incidents or conversations with management which would lead him and the Court to conclude that Mr. Vallejo was his replacement or would lead the Court to conclude that [plaintiff's protected class] was a determinative factor leading to Plaintiff Gonzalez's termination.").

Third, Howard argues she was "treated less favorably that [sic] other similarly situated employees" in that other Edgewood employees who were "not exactly" health teachers were not selected for termination in the reduction-in-force. *Id.* To the same end, Howard then argues that while Gomez "fought" for one male employee, Robert Escobedo, who was proposed for

---

[6] *Cf. Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1397 (7th Cir. 1997) (recognizing that spreading the former duties of a terminated employee among the remaining employees does not constitute replacement but distinguishing it "from a situation in which *A* is fired, *B* and *C* are assigned each to do half the work formerly done by *A*, and *D* is hired to do the work of *B* and *C* that they must give up to do *A*'s work"; this latter situation "is replacement, even though *A*'s duties have been split among two (or more) employees.").

termination in the reduction-in-force but ultimately remained employed by Edgewood, Gomez did not similarly fight for her. *Id.* These arguments also fail to show sufficient evidence from which a fact finder may reasonably conclude that Edgewood intended to discriminate in reaching the adverse employment action.

Howard fails to produce any evidence that she was treated less favorably than other similarly situated employees outside her protected class. In attempting to do so, she points to Karen Ellis and Lanay Balli, both of whom also taught health, and Mike Inco, who taught physical education exclusively, and complains that all of them were not included in the reduction in force. But Ellis and Balli are female. Edgewood's failure to include them in the reduction in force suggests it was *not* motivated by an intent to discriminate against females. And Inco allegedly taught physical education exclusively, as opposed to both physical education and health, which means he would not have been met the reduction-in-force criteria. Accordingly, Howard's arguments do not support any inference of discrimination. *Cf. Easterling v. Young Men's Christian Ass'n. of Metro. Dallas*, No. CIV.A. 3:01-CV-0299M, 2002 WL 31245420, at *3 (N.D. Tex. Oct. 2, 2002) (explaining that plaintiff may establish this fourth element by showing that others similarly situated but not of his sex remained in similar positions).

Howard's argument based on a contention that Gomez fought for one male employee but not for her also fails. According to Howard's evidence, Gomez informed her that he would ensure she had a coaching position, provided Edgewood renewed her contract. *See* Gomez Dep. 105:19-23 (Ex. E to Resp.). Howard appears to argue that Gomez should have provided her with a position as a physical education teacher, as he allegedly did with Clayton Clark. 1st Am. Resp. at 14. But as Gomez explained, whether Howard was permitted to stay employed by Edgewood was not his decision, *see* Gomez Dep. 105:24-106:1, and Howard has not introduced any

evidence to question that explanation. Moreover, Clark did not remain employed by Edgewood after the reduction in force—he retired. *Id.* 106:12-20.

Finally, Howard is not assisted by her contention that a male employee, Robert Escobedo, was proposed for termination in the reduction in force but was ultimately transferred instead. *See* 1st Am. Resp. at 14 (citing Ex. A-15 to Mot.). Of the ten Edgewood employees who were proposed for termination, four were male. *See* Ex. F to 1st Am. Resp. at 4-5. Further, of the ten Edgewood employees who were proposed for termination, four successfully secured a transfer to another position for the 2014-2015 school, two males and two females. Ex. A-15 to Mot. Accordingly, Howard's arguments and evidence simply do not support an inference of sex discrimination.[7]

3. <u>Additional discovery</u>. To prove the fourth element of her prima facie case, Howard alternatively seeks leave to file a motion to compel production of the personnel files of similarly situated employees who remained in similar positions after the reduction in force, including those who were proposed for the reduction in force. 1st Am. Resp. at 15 n. 3. According to Howard, she sought this information in discovery but it was not provided, and the information, if produced, "would have shown that many of the Health and Health/PE teachers were not fired." *Id.*; Howard Decl. ¶ 16. But Howard never moved to compel production of this information before the discovery deadline expired. It was Howard's burden to obtain this evidence before the discovery deadline or explain that the information could not be obtained in

_____

[7] *See Chavarria*, 390 F. Supp. 2d at 598-99 (finding that plaintiff failed to establish the fourth element of her prima facie case of age discrimination where employer retained two older employees out of the five remaining positions and plaintiff failed to provide any specific facts or incidents showing age was a factor or consideration in the employer's decision to include her in the reduction-in-force); *see also Dulin v. Dover Elevator Co.*, 139 F.3d 898 (5th Cir. 1998) (district court properly found that plaintiff failed to establish the fourth element of his prima facie case where the only evidence plaintiff could offer to prove he was discharged because of age was his own subjective belief).

time despite her due diligence. *See Wichita Falls*, 978 F.2d at 919. Because she has not done so here, this request for a Rule 56 continuance should be denied.

        4.    <u>Legitimate nondiscriminatory justification</u>. For all these reasons, Howard has failed to establish a prima facie case with respect to her termination resulting from the reduction in force, and her claim fails on this ground alone. But even assuming Howard could establish a prima facie case here, Edgewood has come forward with a legitimate nondiscriminatory reason for the non-renewal of her contract—Howard's position was included within a reduction in force. According to Edgewood, the reduction in force came about pursuant to a program change developed over the course of the 2013-14 school year in an effort to comply with the state-mandated graduation courses and to provide graduation endorsement options to students. All teachers who held the position of Health and Health/Physical Education teacher at all secondary campuses, male and female, had their employment non-renewed. *See* Mot. at 16-19. A reduction in force "is itself a legitimate, nondiscriminatory reason for discharge." *EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996); *Bourgeois v. Mississippi Valley State Univ.*, 507 Fed. App'x 386, 388 (5th Cir. Jan. 11, 2013). And, in reduction-in-force cases, "the fact that an employee [such as Howard] is qualified for h[er] job is less relevant—some employees may have to be let go despite competent performance." *Tex. Instruments*, 100 F.3d at 1181.

Because Edgewood has come forward with a legitimate nondiscriminatory reason for Howard's contract non-renewal, Howard may only avoid summary judgment if she introduces sufficient evidence to demonstrate a genuine issue of material fact whether the legitimate reason proffered by Edgewood is a pretext for discrimination. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005). Howard "may show [a genuine issue of material fact regarding]

pretext either through evidence of disparate treatment or by showing that [Edgewood's] proffered explanation is false or unworthy of credence." *Palacios v. City of Crystal City, Tex.*, 634 F. App'x 399, 402 (5th Cir. 2015); *see also Britt v. Grocers Supply Co.*, 978 F.2d 1441, 1450 (5th Cir. 1992) ("In the context of summary judgment . . . the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext").

Howard's various attempts to show a genuine issue of material fact regarding pretext fail. "'Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient.'" (quoting *E.E.O.C. v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1443-44 (5th Cir.1995)). Howard points only to shadows, not legitimate reasons to question the proffered justification for the employment action. *See Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir.1999); *Bourgeois*, 507 Fed. App'x at 388-89 (finding that the "mere fact" that Defendant's officer was unaware of the reason why other recommended budgetary reductions were not implemented "does not show that the proffered explanation for [plaintiff's] dismissal was false or unworthy of credence").

The fact that the Edgewood failed to follow its own policies by not placing Howard "into the many vacancies that existed after the exodus of female coaches," 1st Amend. Resp. at 18, also fails as a basis to indicate pretext. A mere alleged failure to follow internal policies is insufficient on its own to show pretext. Howard must also point to evidence that she was treated differently than similarly situated male employees, or she must show a nexus between Edgewood's procedural departure and her status as a female.[8] She does neither.[9] Further, of the

---

[8] *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007) ("A defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other non-minority employees because Title VII does

Edgewood employees proposed for termination in the reduction in force, an even number of male and females were re-employed in other capacities. *See* Ex. A-15 to Mot. at 4.

In sum, Howard's assertion of pretext rests on speculation and her subjective belief that her inclusion in the reduction in force resulted from sex discrimination. Without sufficient evidence to create a genuine issue of material fact regarding pretext, Howard cannot survive summary judgment. *See, e.g.*, *Britt v. Grocers Supply Co*., 978 F.2d 1441, 1451 (5th Cir. 1992) (noting, "speculation and belief" are "insufficient to create a fact issue as to pretext"); *EEOC v. Exxon Shipping Co.*, 745 F.2d 967, 976 (5th Cir. 1984) (noting, "pretext cannot be established by mere 'conclusory statements' of a plaintiff who feels he has been discriminated against") (quoting *Elliott v. Grp. Medical & Surgical Serv*., 714 F.2d 556, 566 (5th Cir. 1983)); *Robbins v. Brennan*, No. CV H-14-2625, 2016 WL 6248311, at *6 (S.D. Tex. Oct. 26, 2016) ("A plaintiff's subjective speculation that he was fired because of his protected status is not evidence that the true reason for his discharge was discrimination.")

     5.    <u>Pay Differential</u>. Howard also asserts that similarly situated male coaches received larger stipends than females. Howard appears to invoke this pay differential in relation

---

not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact.") (quotation marks omitted); *see also Tex. Instruments*, 100 F.3d at 1182 (explaining that "an employer's disregard of its own hiring system does not of itself conclusively establish that improper discrimination occurred or that a nondiscriminatory explanation for an action is pretextual"; and finding that the EEOC failed to establish pretext where it only "bald[ly] assert[ed]" a nexus between the procedural departure and the employees' protected class) (quotation marks omitted); *Powers v. Dallas County Cmty. Coll. Dist*., No. CA3:96-1087-BC, 1997 WL 446442, at *7 (N.D. Tex. Jul. 16, 1997) ("an employer's failure to follow it's [sic] own procedures does not conclusively establish pretext absent some kind of nexus between the employment action and the employee's [protected category]").

[9] *Cf. Tex. Instruments*, 100 F.3d at 1181 (explaining that where a plaintiff was terminated in favor of "clearly less qualified individuals" outside his protected class, a genuine issue of material fact exists as to whether the employer's reason is pretextual); *Walther v. Lone Star Gas Co*., 952 F.2d 119, 123 (5th Cir. 1992) ("a plaintiff can take his case to a jury with evidence that he was clearly better qualified than [employees outside the protected class] who were retained").

to the Equal Pay Act, and her claims under that act are appropriately dismissed on limitations grounds as previously discussed. But even if brought under Title VII, these allegations would fail. Although Howard has produced evidence showing male coaches for the most part received larger stipends than female coaches, Ex. BB to 1st Am. Resp., she has failed to produce any evidence that the male coaches were similarly situated to her. *See Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008) ("An individual plaintiff claiming disparate treatment in pay under Title VII must show that his circumstances are "nearly identical" to those of a better-paid employee who is not a member of the protected class.").[10] In this regard, her conclusory allegation that all head coaching varsity positions involved "equal skill, effort, and responsibility" is insufficient. Howard Decl. ¶ 4, Accordingly, any Title VII pay differential claim would fail on this basis alone.

Moreover, Edgewood has asserted a legitimate nondiscriminatory reason for the stipend differential. According to Edgewood, the stipends were based on the sport coached and what was required to fulfill those specific coaching duties, not the coach's sex. 1st Am. Resp. at 21. Howard nevertheless argues that this reason is actually a pretext for sex discrimination because during the 2016-17 academic year Mike Guyer received $3,000 more in stipends than Howard received for coaching cross-country. 1st Am. Resp. at 22. But nowhere in the record does either party supply the stipend amounts for the 2016-17 year, and according to the evidence presented by Howard, Guyer only coached football and soccer, not cross-country. *See* Exs. S, BB, & CC to 1st Am. Resp.

---

[10] *See also Herster v. Bd. of Supervisors of Louisiana State Univ.*, 887 F.3d 177, 184 (5th Cir. 2018) ("One of the requirements under the *McDonnell Douglas* framework for Herster's gender discrimination in pay claim is that Herster must show that she was paid less than a proffered comparator, not in her protected class, for work requiring substantially the same responsibility. The proffered comparator must be similarly situated to Herster for Herster to satisfy the *McDonnell Douglas* test.").

Howard's arguments and evidence also actually support Edgewood's proffered nondiscriminatory reason for the stipend differential. According to Howard, Edgewood paid male and female tennis coaches the same amount ($6,500). *See* 1st Am. Resp. at 21. And the evidence reveals that Howard's stipends varied with the sport she coached. She received $3,500 as head cross-country coach and $6,500 as head track coach. Ex. BB to 1st Am. Resp. Howard also admitted during her deposition that she felt the *position* of cross country coach was discriminated against with respect to stipends but that she did not believe that she herself was discriminated against in stipend pay. *See* Howard Dep. 75:13-19 (Ex. B-1 to Mot.).

B.    Title VII-Retaliation. Title VII addresses retaliation against employees who report workplace discrimination. *Crawford v. Met. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 273 (2009). To establish a prima facie case of Title VII retaliation, Howard must show the following: (1) she participated in an activity protected by Title VII; (2) Edgewood took materially adverse action against her; and (3) a causal connection between the protected activity and Edgewood's adverse action. *McCoy*, 492 F.3d at 557. Edgewood does not appear to dispute that Howard participated in a protected activity or that nonrenewal of Howard's is an adverse employment action for present purposes. At issue is, first, whether various other actions allegedly committed by Edgewood also could constitute adverse employment actions and, second, whether there is a causal connection between any alleged protected activity and an adverse action.

1.    Adverse actions in the retaliation context. The notion of an "adverse action" has a broader scope in the Title VII retaliation context than in the Title VII discrimination context. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) (noting, "Title VII's substantive [discrimination] provision and its antiretaliation provision are

not coterminous" because the "scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm"). But even in the retaliation context, an employment action capable of triggering liability must be "materially adverse," *i.e.*, one that would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68. This "is 'to separate significant from trivial harms' and 'filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (citing *Burlington N.*, 548 U.S. at 68). Accordingly, mere ostracism, isolation, or rude treatment by coworkers will not constitute a materially adverse action under the *Burlington Northern* standard. *See Stewart*, 586 F.3d at 332; *Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 484–85 (5th Cir. 2008).

In addition to her contract nonrenewal, Howard invokes various actions and occurrences as materially adverse actions. None of these suffices under *Burlington Northern*. Accordingly, Howard cannot make out a prima facie case of retaliation based on Gomez's alleged failure to invite her to an end-of-year athletics picnic award ceremony or his alleged decision to ignore her and begin documenting "things he thought were negative about [her]." 1st Am. Resp. at 16-17. These are "'petty slights, minor annoyances, and simple lack of good manners' that employees regularly encounter in the workplace, and which the Supreme Court has recognized are not actionable retaliatory conduct." *Aryain*, 534 F.3d at 485.

Much the same is true of the fact that Gomez reassigned Howard to cover Forshee's health classes and at the same time "refused to find subs to cover [her] classes and ordered her [to] essentially perform the duties of three coaches." 1st Am. Resp. at 17; Howard Decl. ¶ 5. "Whether a particular [lateral] reassignment is materially adverse depends upon the

circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Burlington N.*, 548 U.S. at 71. There is no evidence that Howard's reassignment or alleged increased workload affected her job title, overall work hours, salary, or benefits. *Id.* Nor is there any evidence that Howard "suffered a diminution in prestige or change in standing among her co-workers. *Id.* Accordingly, neither Howard's reassignment to cover Forshee's health classes nor her alleged increased workload constitutes a materially adverse employment action. *See Stewart*, 586 F.3d at332 (rejecting similar complaint where plaintiff's position, pay, hours, and duties remained unchanged and there was no evidence she suffered a diminution in prestige or change in standing among her coworkers); *Ellis v. Compass Group USA, Inc.*, 426 Fed. App'x 292, 297 (5th Cir. May 20, 2011) (similar holding); *Obondi v. UT Sw. Med. Ctr.*, No. 3:15-CV-2022-B, 2017 WL 2729965, at *14 (N.D. Tex. Jun. 23, 2017) (similar holding).

Finally, Howard invokes a reprimand she received after sending an allegedly inappropriate email. But "[a] written reprimand, without evidence of consequences, does not constitute an adverse employment action." *Thibodeaux–Woody v. Houston Cmty. Coll.*, 593 Fed. App'x 280, 286 (5th Cir. Nov. 14, 2014) (citations omitted). Here, the written reprimand simply directed Howard to "work on" several matters so that the Girl's Track Program could be successful. *See* Ex. M to 1st Am. Resp. It does not reference any adverse consequences nor has Howard introduced any such evidence.

Accordingly, only Howard's contract non-renewal is at issue as an adverse employment action with respect to her Title VII retaliation claim.

2. <u>Causation.</u> Based on the evidence presented, Howard has likely established a prima facie case of retaliation with respect to the causation element of a claim.

"Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). Howard produced evidence indicating that she complained of sex discrimination on February 6, 2014,[11] and the decision not to renew her contract was made two months later, on April 7, 2014. Accordingly, Howard has likely introduced sufficient evidence to make out a prima facie case of retaliation.

   3. <u>Legitimate nondiscriminatory justification.</u> As discussed above, however, Edgewood has asserted a legitimate nondiscriminatory reason for Howard's contract nonrenewal. Howard must therefore introduce evidence to suggest this reason was a pretext for retaliation. And "[i]n order to avoid summary judgment, [Howard] must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Rodriguez v. Brownsville Indep. Sch. Dist.*, No. 17-41115, 2018 WL 3097197, at *3 (5th Cir. Jun. 22, 2018) (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996)); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362-63 (2013). Howard fails to meet her burden here. There is no evidence—direct or circumstantial—suggesting that Edgewood targeted Howard or others who engaged in protected activity for the reduction in force, or even that those employees who did not similarly complain were transferred to other positions. The only evidence Howard asserts is suggestive of pretext is the timing between her complaint and her contract non-renewal, her subjective belief that Gomez was "hostile and combative" to her complaint of sex discrimination, and Edgewood's retention of Escobedo when he allegedly had no history of making complaints of sex discrimination. 1st Am. Resp. at 15-20.

---

[11] *See* Howard Decl. ¶ 5 & Ex. I at 1 to Resp.

For reasons already discussed, this is insufficient.[12] Because Howard has failed to establish a genuine fact issue as to pretext, summary judgment on her Title VII retaliation claim should be granted.

Finally, for the reasons already discussed above, Howard should not be granted a Rule 56 continuance to obtain information she did not timely seek to compel.[13]

## IV.    Conclusion

For the reasons discussed above, the undersigned recommends that the District Court **GRANT** Edgewood's Motion for Summary Judgment, Dkt. No. 32.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party

---

[12] *See Roberson v. Alltel Info. Sers.*, 373 F.3d 647, 656 (5th Cir. 2004) ("Thus, Roberson's argument is reduced to the following: the sole evidence of Alltel's retaliation is that the reduction-in-force occurred after his discrimination complaints. On the other hand we have Alltel's undisputed legitimate, nondiscriminatory reason for its employment action: a company-wide reduction-in-force. Without more than timing allegations, and based on Alltel's legitimate, nondiscriminatory reason in this case, summary judgment in favor of Alltel was proper.").

[13] *See* Howard Decl. ¶ 16 (explaining that she sought documentation of complaints and investigations filed by similarly situated individuals and that she intends to file a motion to compel this information, presumably to oppose Edgewood's summary judgment motion).

shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 11th day of February, 2019.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE